# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Kevin E. E.,**
**Petitioner Below, Petitioner**

**FILED**

October 1, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) **No. 12-1285** (Hampshire County 10-C-15)

**Evelyn Seifert, Warden,**
**Northern Correctional Facility,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Kevin E. E.'s [1] appeal, filed by counsel Brain Vance, arises from the Circuit Court of Hampshire County, wherein petitioner's amended petition for writ of habeas corpus was denied by order entered on October 18, 2012. Respondent Warden Evelyn Seifert,[2] by counsel Marland Turner, filed a summary response in support of the circuit court's decision. On appeal, petitioner alleges that the circuit court erred in denying his amended petition for writ of habeas corpus because he received ineffective assistance of counsel, his confession was coerced, and he did not knowingly and voluntarily enter into an *Alford* plea.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 7, 2004, petitioner was indicted on six counts of sexual abuse by a parent, one count of first degree sexual assault, and five counts of first degree sexual abuse against his six-year-old daughter. Following petitioner's *Alford*[3] plea to one count of sexual abuse by a parent and five counts of first degree sexual abuse, the circuit court sentenced petitioner to a term of incarceration of ten to twenty years for sexual abuse by a parent and one to five years for each

---

[1] Because of the sensitive nature of the facts alleged in this case, we use the initials of the affected parties. *See State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990) ("Consistent with our practice in cases involving sensitive matters, we use the victim's initials. Since, in this case, the victim . . . [is] related to the appellant, we have referred to the appellant by his last name initial." (citations omitted)).

[2] Petitioner named David Ballard, Warden of the Mount Olive Correctional Complex, as the respondent in this case. However, because petitioner is presently incarcerated in the Northern Correctional Facility, pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, we have substituted Evelyn Seifert as the party respondent.

[3] *North Carolina v. Alford*, 400 U.S. 25. (1970).

1

of the five counts of first degree sexual abuse. Petitioner's sentences were ordered to run consecutively, which resulted in a cumulative term of incarceration of fifteen to forty-five years. Petitioner filed his *pro se* petition for writ of habeas corpus in the circuit court on February 5, 2010. After being appointed counsel, petitioner filed his amended petition for writ of habeas corpus on June 23, 2011, alleging eight counts of ineffective assistance of counsel and twenty-two individual grounds for relief. Without holding an evidentiary hearing, the circuit court entered its order denying petitioner habeas corpus relief. This appeal followed.

On appeal, petitioner reasserts assignments of error that he raised in circuit court. Petitioner argues that the circuit court erred in denying his petition for writ of habeas corpus because (1) he received ineffective assistance of counsel, (2) his confession was coerced, and (3) he did not knowingly and voluntarily enter into an *Alford* plea. Respondent argues that that petitioner's brief fails to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure in that it is devoid of any specific citations to the appendix. Respondent argues that petitioner's counsel was not ineffective and that petitioner failed to prove that there was a reasonable probability that, but-for counsel's alleged errors, he would not have pleaded guilty. Additionally, respondent argues that the circuit court conducted a proper colloquy with petitioner pursuant to *Call v. McKenzie*, 159 W.Va. 191, 220 S.E.2d 665 (1975), prior to accepting petitioner's *Alford* plea. Finally, respondent argues that a review of the record fails to show that a State agent coerced petitioner into making a confession and the circuit court excluded any portion of petitioner's statement that was made prior to the reading of his *Miranda*[4] rights.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

Based on our review of the record, we find no error in the circuit court's decision to deny petitioner's habeas corpus relief. The circuit court's order reflects its thorough findings of fact and conclusions of law concerning petitioner's arguments, the same arguments petitioner now raises on appeal. The record on appeal reveals no support for any of petitioner's assignments of error. Having reviewed the circuit court's "Order Denying Petitioner's Petition for Writ Of Habeas Corpus" entered on October 18, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this

---

[4]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.[5]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 1, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[5] Consistent with the first footnote of this Memorandum Decision, we have redacted the circuit court's order to protect the victim's identification, using an initial for petitioner's last name and only initials to reference other family members.

IN THE CIRCUIT COURT OF HAMPSHIRE COUNTY, WEST VIRGINIA

KEVIN E. E

       *Petitioner,*

v.

                           **Case No. 10-C-15**
                           **Honorable Donald H. Cookman**

DAVID BALLARD, WARDEN,
Mt. Olive Correctional Center,

       *Respondent.*

## ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

This matter came before the Court upon Petitioner's *Petition for Writ of Habeas Corpus* filed February 5, 2010; upon an Order Granting Leave to Proceed in Forma Pauperis, Appointing Counsel to File Amended Petition, and Directing Respondent to File an Answer entered February 17, 2010; upon an Agreed Order entered March 5, 2010, granting Petitioner and Respondent additional time to file an Amended Petition and Answer, respectively; upon a Checklist of Grounds Asserted or Waived in Post-Conviction Habeas Corpus Proceeding ("Losh List") filed on April 14, 2010; upon Agreed Orders entered June 11, 2010, August 30, 2010, January 19, 2011, February 11, 2011, and April 21, 2011, granting Petitioner and Respondent additional time to file an Amended Petition and Answer, respectively; upon an Amended Petition filed by Royce B. Saville, counsel for Petitioner, on June 23, 2011; upon a Checklist of Grounds Asserted or Waived in Post-Conviction Habeas Corpus Proceeding ("Losh List") filed on June 23, 2011; upon an Order entered August 16, 2011, granting Respondent additional time to file an Answer; upon a Motion for Ruling on Petition for Writ of Habeas Corpus, or, In the Alternative, Setting This Matter for an Evidentiary Hearing filed by Petitioner on February 6, 2012; upon an Order Directing Respondent to File Answer entered May 9, 2012; upon an Order entered June 1, 2012,

granting Respondent additional time to file an Answer; and upon Respondent's Response to Amended Petition for Writ of Habeas Corpus filed June 4, 2012.

## FINDINGS OF FACT

1. Petitioner was indicted on September 7, 2004, and charged with (Counts One, Two, Three, Four, Five, and Six) Sexual Abuse by a Parent in violation of West Virginia Code § 61-8D-5(a); (Count Seven) Sexual Assault in the First Degree in violation of West Virginia Code 61-8B-3(a)(2); and (Counts Eight, Nine, Ten, Eleven, and Twelve) Sexual Abuse in the First Degree in violation of West Virginia Code § 61-8B-7(a)(3). Petitioner's initial defense counsel was Christopher A. Davis. (Ord. July 30, 2004.) The trial court granted Mr. Davis' Motion to Withdraw and appointed Karen L. Garrett to represent Petitioner. (Ord. Jan. 5, 2005.)

2. On January 19, 2005, Dr. Thomas C. Stein conducted a forensic psychological examination on Petitioner. (Rep. Jan. 28, 2005.) On January 28, 2005, the trial court conducted a competency hearing and found Petitioner, "competent to stand trial, that [Petitioner] was criminally responsible at the time of the alleged offenses, and was competent to waive his Miranda rights at the time that he made a written statement to the state police..." (Ord. Feb. 7, 2005.) On the same date, the trial court also conducted a suppression hearing during which Petitioner testified. The trial court ordered that Petitioner's written statement would be "admissible in the State's case in chief at trial, but that the State would be limited to using only the 'Q's' and 'A's' as they appear in the written statement, and that the officer would not be permitted to testify as to any other inculpatory statements which were not so recorded in writing at that time." (Id.)

3. On February 4, 2005, the Petitioner entered into a written plea agreement whereby he entered an Alford plea to the First Count of the Indictment, Sexual Abuse by a Parent, and to

Counts Eight, Nine, Ten, Eleven, and Twelve of the Indictment, Sexual Abuse in the First Degree. The State agreed to move to dismiss the remaining counts of the Indictment.

4. On July 7, 2005, Petitioner was sentenced as follows: An indeterminate term of not less than ten nor more than twenty years in the penitentiary for Count One and an indeterminate term of not less than one nor more than five years in the penitentiary for Counts Eight through Twelve. The sentences were ordered to run consecutively, with an effective date of July 7, 2005, with credit given for 344 days of confinement. (Ord. July 11, 2005.)

5. The trial court appointed Mrs. Garrett to represent Petitioner for his appeal. (Ord. July 21, 2005.) On February 16, 2006, the Supreme Court of Appeals of West Virginia ("Supreme Court") refused the petition for appeal. (Feb. 24, 2006.)

6. On May 25, 2006, Dr. Christie Cooper-Lehki conducted a forensic psychiatry evaluation: sex offender risk assessment on Petitioner. (Rep. July 17, 2006.) On or about December 22, 2007, Dr. Paul F. Kradel conducted a psychological evaluation on Petitioner. (Rep. Jan. 7, 2008.)

7. On June 8, 2006, Petitioner filed a Motion for Reconsideration of Sentence. On January 15, 2008, the trial court conducted a hearing and denied the Motion. (Ord. Jan. 30, 2008.)

## STANDARD OF REVIEW

8. Claims that have been "previously and finally adjudicated," either on direct appeal or in a previous post-conviction habeas proceeding, may not form the basis for habeas relief. W.Va. Code § 53-4A-1(b); *Bowman v. Leverette*, 169 W.Va. 589, 289 S.E.2d 435 (1982). Any grounds for habeas relief that could have been advanced on direct appeal or in a previous post-conviction proceeding but were not have been waived. W.Va. Code § 53-4A-1(c). The

petitioner bears the burden of demonstrating that such waiver was less than knowing and intelligent. *Ford v. Coiner*, 156 W.Va. 362, 196 S.E.2d 91 (1972).

9. Whether denying or granting a petition for writ of habeas corpus, a circuit court must make adequate findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined. Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal unless such findings are clearly wrong. *Coleman v. Painter*, 215 W.Va. 592, 600 S.E.2d 304 (2004).

10. West Virginia Code section 53-4A-7(c) provides:

> When the court [in a post-conviction habeas corpus proceeding] determines to deny or grant relief ... the court shall enter an appropriate order.... In any order entered in accordance with the provisions of this section, the court shall make specific findings of fact and conclusions of law relating to each contention or contentions and grounds (in fact or law) advanced, shall clearly state the grounds upon which the matter was determined, and shall state whether a federal and/or state right was presented and decided.

## CONCLUSIONS OF LAW

The Court will address separately the grounds alleged in the Amended Petition and not waived in Petitioner's *Losh* List:

### Ineffective Assistance of Counsel

11. The Sixth Amendment to the United States Constitution and Article III, § 14 of the West Virginia Constitution not only assure the "assistance of counsel" to a defendant in a criminal proceeding but also assure that such a defendant receive competent and effective assistance of counsel. *State ex rel. Strogen v. Trent*, 196 W.Va. 148, 152, 469 S.E.2d 7, 11 (1996); *see also Cole v. White*, 180 W.Va. 393, 395, 376 S.E.2d 599, 601 (1988). "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-

pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. pt. 5, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995).

12.     The West Virginia Supreme Court of Appeals ("Supreme Court") has held:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of defense counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id.* at syl. pt. 6. The burden of proof is on the defendant. *Id.* A court is not required to address both prongs of the *Strickland/Miller* test if it can dispose of ineffective assistance of counsel claims on the failure to meet either prong of the test. *State ex rel. Daniel v. Legursky,* 195 W.Va. 314, 465 S.E.2d 416 (1995).

13.     The *Hill v. Lockhart* test is applicable to guilty pleas. 474 U.S. 52 (1985); *State v. Sims,* 248 S.E.2d 834, 838 (W.Va. 1978). Under *Hill,* the defendant must show merely that there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. *Ostrander v. Green,* 46 F.3d 347, 352 (4th Cir. 1995). A guilty plea is valid only if it represents a knowing and voluntary choice among alternatives; therefore, a client's expressed intent to plead guilty does not relieve counsel of their duty to investigate possible defenses and advise the defendant so he can make an informed decision. *See Savino v. Murray,* 82 F.3d 593, 599 (4th Cir. 1996); *State ex rel. Vernatter v. Warden,* 207 W.Va. 11, 528 S.E.2d 207 (1999).

14.     In the context of guilty pleas, the first half of the *Strickland v. Washington* test is the same, but the second, or "prejudice" requirement focuses on whether counsel's

constitutionally ineffective performance affected the outcome of the plea process. "In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Hill*, at 56-60, 369-71; *see also State ex rel. Vernatter v. Warden, W.Va. Penitentiary*, 207 W.Va. 11, 528 S.E.2d 207 (1999).

15. The first prong of the test requires that a petitioner "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court then must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. The petitioner's burden in this regard is heavy, as there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Id.* at 689, 104 S.Ct. at 2065.

16. Syllabus point 6 of *Miller* further explains:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing

of defense counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

17. The *Strickland* Court pointed out that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. The Supreme Court has also emphasized that counsel's strategic decisions must rest upon reasonable investigation:

> The fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation.

Syl. pt. 3, *State ex rel. Daniel v. Legursky.* "Courts applying the *Strickland* standard have found no difficulty finding ineffective assistance of counsel where an attorney neither conducted a reasonable investigation, nor demonstrated a strategic reason for failing to do so." *Daniel,* 195 W.Va. at 320, 465 S.E.2d at 422 (citation omitted).

18. The second or "prejudice" requirement of the *Strickland/ Miller* test looks to whether counsel's deficient performance adversely affected the outcome in a given case. With regard to a conviction resting upon a plea of guilty, the prejudice element "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

19.     Under *Hill*, " '[p]rejudice' is a reasonable probability that the defendant would have insisted on going to trial had he not received the ineffective assistance, and a 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome.' " *Ostrander v. Green*, 46 F.3d 347, 355 (4th Cir.1995) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068), overruled on other grounds by *O'Dell v. Netherland*, 95 F.3d 1214 (4th Cir.1996). While *Hill's* prejudice requirement focuses on a subjective question, "the answer to that question must be reached through an objective analysis." *State ex rel. Vernatter v. Warden, West Virginia Penitentiary*, 207 W.Va. 11, 17-18, 528 S.E.2d 207, 213-14 (1999) (quoting *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir.), *cert. denied*, 488 U.S. 843, 109 S.Ct. 117, 102 L.Ed.2d 91 (1988)).

20.     Here, Petitioner asserts that defense counsel failed to investigate the fact that on July 29, 2004, Petitioner made a statement to Sgt. Ellyson of the West Virginia State Police before he was read his Miranda rights. The Court finds that this issue was addressed at the suppression hearing and that defense counsel questioned Sgt. Ellyson and the Petitioner. The trial court ruled that any statements made by Petitioner not set forth in the written statement would not be admissible at trial. Petitioner further asserts that defense counsel failed to call Laurie Hartman, CPS worker for the West Virginia Department of Health and Human Resources ("DHHR"), as a witness and that her testimony would have revealed that Sgt. Ellyson questioned Petitioner prior to reading his Miranda rights. The Court finds that defense counsel cross-examined Sgt. Ellyson with regard to this issue and was able to obtain a favorable suppression ruling without Ms. Hartman's testimony.

21. Petitioner further asserts that defense counsel failed to read Dr. Stein's evaluation, which concluded that Petitioner was unable to read or comprehend what he was being asked by the police officers. The Court finds that defense counsel made numerous references to Dr. Stein's evaluation and that defense counsel arranged for Dr. Stein to conduct the evaluation. (Ltr. Jan. 28, 2005.) The Court further finds that Sgt. Ellyson and Petitioner testified as to Petitioner's reading ability and intelligence and therefore, defense counsel was made aware of both issues.

22. Petitioner further asserts that defense counsel failed to file the proper motions to suppress Petitioner's confession. The Court finds that a Motion to Suppress was filed on September 8, 2004, and that a suppression hearing was held on the Motion on January 28, 2005.

23. Petitioner further asserts that defense counsel failed to obtain Petitioner's medical records which would have shown that Sgt. Ellyson had already formed an opinion about Petitioner's guilt when he informed medical staff at the hospital that Petitioner was going to be arraigned the same day of his attempted suicide. The Court is unaware of whether or not defense counsel obtained Petitioner's medical records. However, the Court finds that the medical records attached to the Amended Petition do not mention Sgt. Ellyson.

24. Petitioner further asserts that defense counsel mistakenly advised him that he would be eligible for probation if he entered into an Alford plea and that defense counsel failed to advise Petitioner of his right to withdraw his plea after it was entered. West Virginia Code § 62-12-2(e) indicates that a person found guilty of a sexual offense is eligible for probation. The Court finds that if defense counsel advised Petitioner that he would be eligible for probation, then defense counsel's advice was correct. The Court notes that being eligible for probation does not guarantee that a motion for probation will be granted. Rule 32(e) of the West Virginia Rules

of Criminal Procedure governs the withdrawal of a plea. The Court concludes that a defendant does not have a right to withdraw a plea, but must move the court to permit a withdrawal.

25. Petitioner further asserts that defense counsel failed to challenge the multiple sentences imposed by the trial court following entry of the plea. The Court finds that defense counsel did challenge the consecutive sentences in the petition for appeal and did argue for concurrent sentencing at the sentencing hearing.

26. Petitioner further asserts that defense counsel's incorrect legal advice induced the Alford plea. The Court finds that the Petitioner did not provide any supporting facts or argument with regard to this ground.

27. The Court concludes that the Petitioner has not met his burden of identifying what defense counsel did or did not do that was outside the range of reasonable professional judgment. Therefore, the Court concludes that Petitioner failed to meet his burden with regard to the first prong of *Miller*.

28. Although this Court is not required to address both prongs of the *Miller* test if the Petitioner fails to meet his burden on one prong, the Court has considered both prongs. The Court finds that there was substantial evidence against Petitioner, including his confession, and at no time has he ever asserted his innocence. The Court concludes there is no reasonable probability that he would have insisted on going to trial and risked a conviction on all twelve counts. In sum, the Court concludes that Petitioner did not have ineffective assistance of counsel and that he is not entitled to any relief on this ground.

## Unlawful and Excessive Sentence

29. In syllabus point 8 of *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980), the Supreme Court explained: Article III, Section 5 of the West Virginia Constitution, which

contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offense.' U.S. CONST. amend. VIII; W.VA. CONST. Art. 3, § 5.

30. A trial court's discretion during the sentencing phase of a criminal proceeding is a critical component of the criminal justice system. *See State v. Head*, 198 W.Va. 298, 306, 480 S.E.2d 507, 515 (1996) (Cleckley, J., concurring) ("Circuit court judges have a right to believe that so long as they have not violated a law or acted in a nefariously discriminatory way in imposing sentences, this Court will not sift through the nooks and crannies of their decisions determined on finding that which is not there."). In *State v. Sugg,* the Supreme Court held that, "[a]s a general proposition, we will not disturb a sentence following a criminal conviction if it falls within the range of what is permitted under the statute." 193 W.Va. 388, 406, 456 S.E.2d 469, 487 (1995).

31. The Supreme Court further held that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. pt. 4, *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982); *State v. Watkins*, 214 W.Va. 477, 482-83, 590 S.E.2d 670, 675-76 (2003); syl. pt. 2, *State v. Farmer,* 193 W.Va. 84, 454 S.E.2d 378 (1994); syl. pt. 4, *State v. Murrell,* 201 W.Va. 648 499 S.E.2d 870 (1997); *Sugg,* 193 W.Va. at 406, 456 S.E.2d at 487. The Supreme Court has also deemed that it is generally the better practice to decline to review sentences that are within statutory limits and where no impermissible sentence factor is indicated. *State v. Slater,* 222 W.Va. 499, 507-08, 665 S.E.2d 674, 682-83 (2008); *State v. Cooper,* 172 W.Va. 266, 271, 304 S.E.2d 851, 855 (1983).

32. The Supreme Court has also held that "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syl. pt. 4, *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981); *State ex rel. Hatcher v. McBride*, 221 W.Va. 760, 763-64, 656 S.E.2d 789, 792-93 (2007).

33. In *State v. Cooper,* the Supreme Court outlined the two tests used to determine whether a sentence is so disproportionate to a crime that it violates the West Virginia Constitution:

> The first [test] is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test[.]

172 W.Va. 266, 272, 304 S.E.2d 851, 857 (1983). The objective test guidelines were set out in syllabus point 5 of *Wanstreet v. Bordenkircher,*

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

166 W.Va. 523, 276 S.E.2d 205.

34. With regard to imposing consecutive sentences, "When defendants receive multiple convictions, trial judges in this State have wide discretion in deciding whether to impose concurrent or consecutive sentences." *State v. Eilola*, 226 W.Va. 698, 711, 704 S.E.2d 698, 711 (2010) (quoting *State v. Allen*, 208 W.Va. 144, 155, 539 S.E.2d 87, 98 (1999)); Syl. pt. 3, *Keith v. Leverette*, 163 W.Va. 98, 254 S.E.2d 700 (1979) ("When a defendant has been convicted of two separate crimes, before sentence is pronounced for either, the trial court may, in

its discretion, provide that the sentences run concurrently, and unless it does so provide, the sentences will run consecutively.") The Supreme Court has also recognized that " '[c]onsecutive sentences are an appropriate mechanism for imposing a distinct punishment for each of two criminal acts.' " *State v. Holcomb*, 178 W.Va. 455, 462, 360 S.E.2d 232, 239 (1987) (quoting *United States v. Lustig*, 555 F.2d 751, 753 (9th Cir.1977)).

35.     Here, Petitioner asserts that his sentence is excessive because he had no prior criminal record, demonstrated no prior propensity for violence or sexual offenses, cooperated with the authorities, never threatened his victim nor urged her not to tell, and admitted his actions to his wife and apologized to both his wife and the victim. Petitioner further asserts that his sentence of 15-45 years violates the proportionality principle. Petitioner argues that a comparable crime in the Commonwealth of Virginia is punishable by imprisonment of not less than one year nor more than five years, or confinement in jail for not more than 12 months and a fine of not more than $2,500, either or both. Code of Va. § 18.2-10. Petitioner further argues that the crime of incest in West Virginia is punishable by imprisonment for not less than five nor more than 15 years, or a fine and imprisonment. W.Va. Code § 61-8-12.

36.     The Court concludes that the trial court followed the recommendations of the State, the presentence investigation report, and the 60-day evaluation in exercising the court's discretion in ordering consecutive sentences. The Court concludes that the sentence is not disproportionate to the crimes. Under the subjective test, the Court finds that the sentence does not shock the conscience. Under the objective test, the Court finds that these crimes were sexual offenses perpetuated by Petitioner against his own daughter. The Court further finds that the trial court complied with the provisions of W.Va. Code §§ 61-8D-5(a) and 61-8B-7 in sentencing Petitioner and that the Legislature specifically provided for separate punishments for these

crimes. The Court concludes that the sentences imposed are within statutory limits. Therefore, the Court concludes that Petitioner is not entitled to any relief with regard to this ground.

## Petitioner's Alford Plea Was Not Knowingly Made or Not Made Voluntarily

37.    According to Rule 11(c) of the West Virginia Rules of Criminal Procedure: Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

> (1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and
> (2) If the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and
> (3) That the defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that the defendant has the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right against compelled self-incrimination, and the right to call witnesses; and
> (4) That if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and
> (5) If the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false swearing.
> (d) Ensuring That the Plea Is Voluntary. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney.

38.    With regard to due process and Rule 11, which the principles of justice and fairness underlie:

> Due process only requires that a guilty plea be voluntary, knowing and intelligent. The requirements of Rule 11, while they assist in ensuring that guilty pleas comport with this basic constitutional requirement, are not of themselves of

constitutional significance. Accordingly, the United States Supreme Court in *United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979), held that assertions of Rule 11 error are generally not cognizable in the analogous federal context of post-conviction motions brought pursuant to 28 U.S.C. § 2255. Under the approach set forth in *Timmreck,* a habeas petitioner may successfully challenge a guilty-plea conviction based upon an alleged violation of Rule 11 only by establishing that the violation constituted a "constitutional or jurisdictional" error, 441 U.S. at 783, 99 S.Ct. at 2087 (citing *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)); or by showing that the error resulted in a " 'complete miscarriage of justice,' " or in a proceeding " 'inconsistent with the rudimentary demands of fair procedure,' " 441 U.S. at 784, 99 S.Ct. at 2087 (quoting *Hill,* 368 U.S. at 428, 82 S.Ct. at 471). Moreover, the petitioner must also demonstrate that "he was prejudiced in that he was unaware of the consequences of his plea, and, if properly advised, would not have pleaded guilty." *Id. Cf. Pugh v. Leverette,* 169 W.Va. 223, 234, 286 S.E.2d 415, 421 (1982). Thus, a prisoner may not collaterally attack a guilty plea under Rule 11 where "all that is shown is a failure to comply with the formal requirements of the Rule." *Id.* at 785, 99 S.Ct. at 2088.

*State ex rel. Vernatter v. Warden, W.Va. Penitentiary,* 207 W.Va. 11, 19-20, 528 S.E.2d 207, 215-16 (1999).

39.     The seminal case on whether a guilty plea was given voluntarily and knowingly is *Call v. McKenzie,* 159 W.Va. 191, 220 S.E.2d 665 (1975). In *Call,* the Supreme Court established several guidelines that trial courts should follow in ascertaining whether a defendant's plea of guilty is voluntarily and knowingly made:

> In addition to advising the defendant of the numerous constitutional rights he waives by pleading guilty, the trial court should recite the terms of the plea agreement and should assure itself that there is no coercion or undue pressure on the defendant to enter a plea. Finally, the trial court should inquire about the defendant's education, his history of mental illness or drug abuse, and whether he has had an opportunity to consult with friends and relatives before making his decision to plead guilty.

*Duncil v. Kaufman,* 183 W.Va. 175, 179-80, 394 S.E.2d 870, 874-75 (1990).

40.     When the voluntariness of a guilty plea is challenged "on the grounds that fall within those on which counsel might reasonably be expected to advise," the validity of the plea

is tested by the "competency of the advice given by counsel." *State v. Sims*, 248 S.E.2d 834, 838 (W.Va. 1978). Furthermore,

> Before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; (3) the guilty plea must have been motivated by the error.

*Id.* "The burden of proving that a plea was involuntarily made rests upon the pleader." Syl. pt. 3, *State ex rel. Clancy v. Coiner*, 154 W.Va. 857, 179 S.E.2d 726 (1971).

41. Whether a guilty plea is voluntary depends upon information known by the defendant at the time the plea was entered, including what was learned out of court. *Henderson v. Morgan*, 426 U.S. 637, 647, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976); *cf.* syl. pt. 2, *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978) ("The controlling test as to the voluntariness of a guilty plea, when it is attacked either on a direct appeal or in a habeas corpus proceeding on grounds that fall within those on which counsel might reasonably be expected to advise, is the competency of the advice given by counsel.").

42. Here, Petitioner argues that he lacked the mental capacity to enter a plea. The Court finds that at the plea hearing held on February 4, 2005, the Petitioner was first placed under oath. The trial court explained that Petitioner would be waiving a right to a trial by a jury (Tr. 14:9-20:7), waiving any defenses to the charges against him (Tr. 21:16-19), and waiving any claim that he had been treated unfairly. (Tr. 22:9-12.) The trial court inquired about Petitioner's education, age, and work history. (Tr. 30:21-35:17.) Petitioner said that he was taking medication for depression and chronic back pain, but answered in the negative when asked whether his use of those medications affected his ability to understand the proceedings. (Tr. 36:7-25.) The Prosecutor then proffered for the record a summary of the State's evidence against

Petitioner. (Tr. 38:12-39:18.) Petitioner did not object to the proffer of evidence. (Tr. 39:23-40:1.)

43.     The Court further finds that Petitioner was evaluated by psychologist Frances Allen-Henderson, Dr. Cooper-Lehki, Dr. Kradel, and Dr. Stein, none of whom indicated in their evaluations any impairment of Petitioner's mental health or intelligence that would have rendered him unable to enter a plea.

44.     Therefore, the Court concludes that the trial court correctly followed the guidelines of *Call v. McKenzie, supra,* and that Petitioner failed to prove his plea was involuntarily given.

## The Court Did Not Have the Right to Try Petitioner Nor to Accept His Plea

45.     Petitioner alleges that the trial court did not have the right to try him and that he lacked the mental capacity to enter a plea. For the reasons stated in paragraphs 42, 43, and 44, *supra,* the Court concludes that Petitioner is not entitled to any relief with regard to this ground.

## Lack of Mental Capacity to Waive *Miranda* Rights and Right to Counsel

46.     Petitioner alleges that he has limited mental capacity, is functionally illiterate, and was under the influence of prescription medicine at the time he gave his statement. For the reasons stated in paragraphs 42, 43, and 44, *supra,* the Court concludes that Petitioner is not entitled to any relief with regard to this ground.

## Questioned by Law Enforcement Prior to Being Advised of *Miranda* Rights

47.     The Court finds that the trial court made a ruling on this issue at the suppression hearing. The Court finds that the ruling was favorable to Petitioner in that any statements made by Petitioner not contained in the written statement were suppressed. Any evidence which may

have been improperly obtained would have been excluded from evidence at trial. Therefore, the Court concludes that Petitioner is not entitled to any relief with regard to this ground.

## Prompt Presentment Before a Magistrate

48. The prompt presentment rule is triggered when the accused is placed under arrest or once the defendant is in police custody with sufficient probable cause to warrant arrest. *State v. Humphrey*, 177 W.Va. 264; 351 S.E.2d 613 (1986). "The focus is not so much on the length of the detention but whether the police were primarily using the delay in bringing the defendant before a magistrate to obtain a confession from him." *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982).

49. The Supreme Court has held, "The prompt presentment rule is not a constitutional doctrine. It is a legislatively created and judicially adopted rule. The right to prompt presentment is not constitutionally guaranteed outside the context of a warrantless arrest, but rather exists as a statutory and procedural right." *State v. DeWeese*, 213 W.Va. 339, 582 S.E.2d 786 (2003) (internal citations omitted).

50. Here, Petitioner argues that Sgt. Ellyson informed him before his interview that he was not under arrest and was free to leave, despite Sgt. Ellyson, prior to the interview, speaking to Ms. Hartman and Mrs. E⁄ about the offense and recommending that Mrs. E obtain a domestic violence protective order against the Petitioner. Petitioner argues that because Sgt. Ellyson had probable cause to arrest him prior to the interview, he should have been promptly presented to the magistrate. *See* W.Va. Code § 62-1-5(a)(1); *State v. Mason*, 162 W.Va. 297, 249 S.E.2d 793 (1978) (holding the Code provision to be mandatory).

51. The Court finds that Sgt. Ellyson testified at the suppression hearing that Petitioner traveled to the police barracks and indicated he wanted to give a statement. The Court

further finds that the record does not indicate any unnecessary delay in taking Petitioner before a magistrate nor does the record indicate that Sgt. Ellyson knew that Petitioner had just been released from a hospital in the State of Maryland.

## Court Error in Failing to Suppress Petitioner's Statement

52. Article 3, Section 5 of the West Virginia Constitution provides that no person in any criminal case shall be compelled to be a witness against himself. Article 3, Section 10 of the West Virginia Constitution provides that no person shall be deprived of life, liberty, or property without due process of law.

53. Here, Petitioner asserts that he was advised by Sgt. Ellyson that he was not under arrest and was free to leave at any time. Because of this, Petitioner asserts that he gave a statement, believing that he would not be arrested especially in light of the fact that prior to arriving at the State Police barracks, he had appeared before the Hampshire County Magistrate Court and nothing had happened to him. Petitioner further argues that his statement was obtained in violation of the prompt presentment rule.

54. For the reasons stated in paragraph 47, *supra*, the Court concludes that Petitioner is not entitled to any relief with regard to this ground.

## Misleading Comments by the Prosecuting Attorney

55. With regard to comments made by a prosecuting attorney,

Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

*Sugg v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995). Further "not all improper prosecutorial statements will lead to reversal of a defendant's conviction." *State v. McCracken*, 218 W.Va. 190, 624 S.E.2d 537 (2005) (internal citations omitted).

56. Here, Petitioner alleges that the Prosecuting Attorney argued that Petitioner was mentally competent at the time he waived his Miranda rights and gave a statement. Petitioner argues that according to Dr. Stein's forensic psychological examination, Petitioner functioned within the low average range of intelligence, at a fourth grade reading level, with an underlying learning disability. Petitioner further alleges that the Prosecuting Attorney argued that Petitioner knew or should have known what he was signing when he signed a statement at the police barracks. Petitioner argues that because he functions at a fourth grade reading level, he was not able to read and comprehend.

57. The Court finds that according to Dr. Stein's report, "It is my opinion that he was competent then to have waived Miranda rights." The Court finds that the Prosecuting Attorney relied on Dr. Stein's report and that his statement was not misleading.

## Suppression of Evidence by the Prosecuting Attorney

58. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963).

59. Petitioner asserts that the Prosecuting Attorney suppressed medical records which showed that the State Police had informed the hospital that Petitioner was going to be arraigned for child molestation charges and that he was going to be in court that day. Petitioner argues that

the notation in the medical records that Petitioner was "to be arraigned for child molestation charges on the day of admission" refutes the testimony of Sgt. Ellyson that he was not aware.

60. The Court finds that the record does not indicate whether or not the State even possessed these records. The Court would note that Petitioner likely could have obtained these records himself by signing a medical release. The medical records attached to the Amended Petition contain an admission by Petitioner that he had been sexually abusing his daughter for approximately one month. The Court believes such evidence would not have been favorable to Petitioner. Therefore, the Court concludes that Petitioner is not entitled to any relief with regard to this ground.

## Lack of Mental Competency at the Time of the Offense and the Hearing

61. Petitioner argues that due to his diminished mental capacity and learning disabilities, he lacked the mental competency to fully comprehend what occurred at the time of the offense, at his interviews with DHHR and the State Police, and at the hearing.

62. The Court finds that Dr. Stein's report indicates that,

At the time of the alleged incidents of sexual abuse, that [Petitioner] was not suffering from mental illness, mental retardation, or addiction to drugs or alcohol that prevented him from being able to conform his behaviors to the requirements of the laws of this State. Thus I believe he should be viewed by the Court as having been criminally responsible for the allegations currently pending against him.

The Court further finds that the expert reports indicate Petitioner was mentally competent at the time of the offense and the hearing. Therefore, the Court concludes Petitioner is not entitled to any relief with regard to this ground.

## Coerced Confession

63. "The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part of all of an offense

were voluntary before such may be admitted into the evidence of a criminal case." Syl. pt. 5, *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975). The voluntariness of a confession may be affected by the mental condition of the accused. *State v. Hamrick*, 169 W.Va. 129, 236 S.E.2d 247 (1977). "Misrepresentations made to a defendant or other deceptive practices by police officers will not necessarily invalidate a confession unless they are shown to have affected its voluntariness or reliability." Syl. pt. 6, *State v. Worley*, 179 W.Va. 403, 369 S.E.2d 706 (1988).

64. Here, Petitioner alleges that he was coerced at the time he made his alleged confession because of his medication, the promises from his wife, and the misstatements by the police and other state officials, i.e. Ms. Hartman.

65. For the reasons stated in paragraphs 42, 43, and 44, *supra*, the Court concludes that Petitioner is not entitled to any relief with regard to this ground.

## Insufficiency of Evidence

66. "Except in extraordinary circumstances, on a petition for habeas corpus, an appellate court is not entitled to review the sufficiency of the evidence." *Cannellas v. McKenzie*, 160 W.Va. 431, 436, 236 S.E.2d 327, 331 (W.Va. 1977) (citing *Riffle v. King*, 302 F.Supp. 992 (N.D.W.Va. 1969), and *Young v. Boles*, 343 F.2d 136 (4th Cir. 1965)).

67. The Supreme Court has provided guidance with regard to considering the sufficiency of the evidence on an appeal:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

68.	Further,

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. pt. 3, *id.*

69.	Here, Petitioner argues that the evidence presented to the grand jury was insufficient to indict Petitioner on the various charges. Petitioner further argues that the State's evidence was presented through the testimony of only one witness and that this evidence was insufficient to convince a reasonable person of Petitioner's guilt beyond a reasonable doubt.

70.	The Court finds that the burden of proof to obtain a grand jury indictment is probable cause that a crime was committed by the accused, not proof of guilt beyond a reasonable doubt. The Court further finds that Petitioner's conviction was based, in part, on a confession and that ultimately Petitioner chose to enter a plea. The Court further finds that this case does not present any extraordinary circumstances that would entitle the Court to review the sufficiency of the evidence. Therefore, the Court concludes that Petitioner is not entitled to any relief on this ground.

## Defects in Indictment

71.	" 'An indictment [or information] for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the

statute on which the charge is based.'" Syl. pt. 3, *State v. Donald S.B.*, 184 W.Va. 187, 188, 399 S.E.2d 898, 899 (1990) (quoting syl. pt. 3, *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983); syl. pt. 3, *State v. Wade*, 174 W.Va. 381, 327 S.E.2d 142 (1985)).

72.    W. Va.Code § 62–2–10 provides that, "No indictment or other accusation shall be quashed or deemed invalid ... for omitting to state, or stating imperfectly, the time at which the offense was committed, when time is not of the essence of the offense[.]" *See State ex rel. Thompson v. Ballard*, 728 S.E.2d 147, 152 (2012).

73.    Here, Petitioner argues that the alleged offenses in the Indictment spanned a period of approximately a month and a half and that the dates were vague, which prevented him from presenting an alibi defense because there was no way to limit the time frame of the Indictment.

74.    The Court finds that the Indictment specifies a range of dates. The Court is unclear how Petitioner would have presented an alibi defense when he could not tell law enforcement or the trial court the time frame for when he committed the offenses. The Court finds that time is not an element of the offense with which Petitioner was charged. Therefore, the Court concludes that Petitioner is not entitled to any relief on this ground.

### Non-Disclosure of Grand Jury Minutes

75.    Petitioner alleges that the grand jury minutes were necessary for impeachment purposes as to the testimony of Trooper Mason, who testified before the Grand Jury, and the inconsistencies in the police report and Sgt. Ellyson's testimony.

76.    Rule 6 of the West Virginia Rules of Criminal Procedure provides that grand jury proceedings are subject to a general rule of secrecy, with a few limited exceptions. The Court

finds that none of those exceptions apply to this case. Therefore, the Court concludes that Petitioner is not entitled to any relief on this ground.

## Use of Informers to Convict

77. Petitioner alleges that the trial court's refusal to order disclosure of informers violated his rights to due process and to compulsory process to secure the attendance of witnesses.

78. The Court finds that Petitioner offers no factual evidence in support of this argument and that the record does not disclose that any informers were used in this case. Therefore, the Court concludes that Petitioner is not entitled to any relief on this ground.

## Constitutional Errors in Evidentiary Rulings

79. Petitioner alleges that the trial court made constitutional errors in that his statement would have been the only evidence used if his case had gone to a jury trial.

80. The Respondent argues that had the case gone to trial, the State would have offered the testimony of Petitioner's wife and the Petitioner's daughter.

81. For the reasons stated in paragraphs 42, 43, and 44, *supra*, the Court concludes that Petitioner is not entitled to any relief with regard to this ground.

## Unfulfilled Plea Bargain

82. Petitioner alleges that the Prosecuting Attorney did not comply with the terms and conditions of the plea agreement.

83. The plea agreement indicates that Petitioner would enter an Alford plea to certain offenses, both the State and the Petitioner would make sentencing recommendations, and the State would move to dismiss certain counts of the indictment. The Court finds that these things

did in fact occur. Therefore, the Court concludes that Petitioner is not entitled to any relief on this ground.

## Multiple Sentences for a Single Act and Double Jeopardy

84. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. U.S. CONST. amend. V; *Conner v. Griffith*, 160 W.Va. 680, 238 S.E.2d 529 (1977). "The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense." *Connor*, at syl. pt. 1.

85. When a double jeopardy challenge is brought to multiple punishments arising under the same statutory provision, the legislatively intended unit of prosecution must be determined in deciding whether a criminal defendant may be punished for multiple violations of a single statutory provision. *State v. Green*, 207 W.Va. 530, 537-38, 534 S.E.2d 395, 402-03 (2000). To determine the legislatively intended unit of prosecution, a court should first look at the language of the statute. *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). If the language is clear and unambiguous, the plain meaning is to be accepted without using the rules of interpretation. *Elder*, at syl. pt. 2. Unless there is clear legislative intent to allow multiple punishments, all "doubt will be resolved against turning a single transaction into multiple offenses." *State v. Collins*, 174 W.Va. 767, 773, 329 S.E.2d 839, 845 (1984). If the legislature fails to indicate with clarity the unit of prosecution and sentence, doubt as to the legislative intent

should be resolved in favor of lenity for the accused. *State v. Sears*, 196 W.Va. 71, 81, 468 S.E.2d 324, 334 (1996). Multiplicitous charges mean that a defendant may receive more than one punishment for a single offense, which violates double jeopardy principles

86. Petitioner alleges that West Virginia is the only jurisdiction in the United States that allows separate punishments for sexual abuse and sexual abuse by a guardian when only one act is committed. The Court finds that the Legislature has made it abundantly clear that West Virginia Code § 61-8D-5 is a separate and distinct crime from other sexual offenses. *See also State v. George W.H.*, 190 W.Va. 558, 439 S.E.2d 423 (1993); *State v. Cecil*, 221 W.Va. 495, 655 S.E.2d 517 (2007).

87. The Court further finds that Petitioner was convicted based on multiple acts occurring on separate occasions. The crimes were the same offenses, but were not a single act. Therefore, the Court concludes that Petitioner's conviction and sentence do not violate double jeopardy principles.

### Composition of the Grand Jury and Its Procedures

88. Petitioner alleges that his due process rights were violated because he was denied access to the grand jury proceeding prior to going to trial.

89. The Court finds that Petitioner did not provide any supporting facts or argument with regard to this ground. Therefore, the Court concludes that there is no merit to this allegation and Petitioner is not entitled to any relief.

### Improper Venue

90. Petitioner alleges that Hampshire County was an improper venue because of widespread adverse publicity.

91.     The Court finds that the record contains no evidence of widespread publicity. The Court further finds that a change of venue was unnecessary because the case was not tried by a jury. The Court further finds that venue was proper because all of the offenses charged occurred in Hampshire County. Therefore, the Court concludes that Petitioner is not entitled to any relief on this ground.

## Prejudicial Statements by the Trial Court

92.     Petitioner alleges that the trial court made the following prejudicial statement during the July 7, 2005, sentencing hearing: "It would be further ordered and the Court makes this order for the following reasons: It appears from all of the reports filed including the one from Dr. Stein that you are a pedophile and that without some intervention, that you may very well reoffend." (Tr. 13:20-24, July 7, 2005.) Petitioner asserts that Dr. Stein was unable to conclude that he was a pedophile. Petitioner asserts that defense counsel informed the trial court that she was contacted by Dr. Kradel who said he did not view the 60-day evaluation as a bad report because it did not foreclose the possibility of Petitioner receiving outpatient treatment. (Tr. 7-8, July 7, 2005.)

93.     The Court finds that because the case was not tried before a jury, the statement of the trial court was not prejudicial with regard to a conviction. The Court further finds that the trial court was merely reciting information obtained from various reports and evaluations. Therefore, the Court concludes that Petitioner is not entitled to any relief on this ground.

## Question of Actual Guilt Upon An Acceptable Guilty Plea

94.     Petitioner asserts that he lacked the mental capacity to enter an Alford plea and that his defense counsel erred by not asserting his actual innocence.

95.     Petitioner did not assert his innocence at the plea hearing or at any other hearing. Petitioner did not provide any supporting facts or argument with regard to this ground. Therefore, the Court concludes that there is no merit to this allegation and Petitioner is not entitled to any relief.

### Mistaken Advice of Counsel as to Parole or Probation Eligibility

96.     Petitioner asserts that defense counsel mistakenly advised that he would be eligible for probation if he entered into a plea agreement.

97.     For the reasons stated in paragraph 24, *supra*, the Court concludes that Petitioner is not entitled to any relief with regard to this ground.

98.     The Petitioner did not make any allegations of any Federal grounds in his Amended Petition or Memorandum and therefore, the Court makes no findings thereon.

99.     The Court concludes that an evidentiary hearing is not required for the Court to make these findings and conclusions inasmuch as all of the grounds alleged can readily be determined by reference to the record in State v. Kevin E          E     , Hampshire County Criminal Action Number 04-F-40. *See e.g. Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973); *State ex rel. Waldron v. Scott*, 222 W.Va. 122, 663 S.E.2d 576 (2008) (per curiam).

WHEREFORE the Court does hereby ADJUDGE and ORDER that the Amended Petition for Writ of Habeas Corpus is DENIED.

It is further ORDERED:



❖ The Circuit Clerk shall send true copies of this Order to the Prosecuting Attorney of Hampshire County, Counsel for the Petitioner, and to the Petitioner.

❖ The objection of the parties to any and all adverse rulings is noted.

❖ Nothing further is remaining to be done in this matter, and the Circuit Clerk shall

Page 29 of 30

remove this action from the docket and place it among the matters ended.

ENTERED this 18th day of October, 2012.

_____
DONALD H. COOKMAN, JUDGE

A TRUE COPY
ATTEST:

_____
Clerk of the Circuit Family Courts
of Hampshire County, West Virginia